IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CHARLES EDWARD ROBINSON, III                    PETITIONER

           v.            Case No. 5:22-CR-50030-TLB-CDC

UNITED STATES OF AMERICA                          RESPONDENT

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

On November 4, 2024, Petitioner Charles Edward Robinson, III ("Robinson"), proceeding *pro se*, filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (Doc. 139). Pursuant to the provisions of 28 U.S.C. § 2255, this matter was referred to the undersigned for the purposes of making a Report and Recommendation.[1] For reasons explained below, it is recommended that Robinson's Motion be **DENIED**.

**I. BACKGROUND**

Following Robinson's December 7, 2021, arrest on state charges, Robinson was indicted by a federal grand jury on April 20, 2022, on two counts: (1) Felon in Possession of a Firearm and (2) Possession with Intent to Distribute Marijuana, a Schedule I controlled substance. (Doc. 1). Robinson was arrested on a federal arrest warrant on April 28, 2022, and has since remained in federal custody. (Doc. 4).

---

[1] Pursuant to General Order 2024-05, filed on December 3, 2024, the Western District of Arkansas' practices with respect to Section 2255 Motions was amended and General Order No. 22, dated October 19, 2010, was superseded. The above-captioned matter was referred to a U.S. Magistrate Judge for report and recommendation on November 4, 2024, prior to the district's enactment of General Order 2024-05. Recognizing the continued shortage of a district judge and increased workloads, and considering the need for judicial efficiency, the Magistrate Judge did not seek reassignment but enters this report and recommendation pursuant to General Order No. 22.

At Robinson's May 2, 2022, arraignment, Assistant Federal Public Defender Kevin Lammers ("Lammers") was appointed as counsel. (Docs. 8-10). On June 3, 2022, Lammers filed a motion to withdraw as Robinson's defense counsel. (Doc. 15). After the undersigned conducted an ex parte hearing, Robinson's motion was granted on June 8, 2022, (Docs. 18, 19), and CJA Panel Counsel Mauricio Herrera ("Herrera") was appointed as Robinson's new defense counsel. (Doc. 19). Robinson was represented by Herrera when Robinson was arraigned on the First, Second and Third Superseding Indictments. (Docs. 22, 37, 45). On September 30, 2022, U.S. District Judge Timothy L. Brooks denied Defendant's motion to suppress evidence of Corporal Townsend's search of Robinson's vehicle, including a K-9 sniff and the search itself. (Doc. 52). On October 5, 2022, Robinson's case was scheduled for trial on the charges contained in the Third Superseding Indictment. (Doc. 54).

The following day, October 6, 2022, Herrera filed a motion to withdraw as Robinson's counsel. (Doc. 56). The undersigned conducted another ex parte hearing, and on October 12, 2022, granted Herrera's motion to withdraw. (Docs. 60, 61). On October 13, 2022, Andrew R. Miller ("Miller") entered his appearance after being appointed as Robinson's third (and final) appointed counsel in this matter. (Doc. 62). Robinson's jury trial was continued (Doc. 63) and Robinson was arraigned on a Fourth Superseding Indictment on November 18, 2022. (Docs. 66, 71). Judge Brooks rescheduled Robinson's jury trial for January 9, 2023. (Doc. 63). Following a Pretrial Conference with Judge Brooks on January 5, 2023, Robinson's jury trial was terminated and reset for March 13, 2023. (Docs. 92-94).

After a failed plea hearing on January 5, 2023, (Doc. 90), and a Motions Hearing on February 14, 2023, (Doc. 99), Robinson signed a plea agreement. (Doc. 105, ¶ 23). On February 21, 2023, Robinson appeared before Judge Brooks and pled guilty to Count Two of the Fourth

Superseding Indictment which charged Robinson with Possession with Intent to Distribute Less than Fifty Kilograms of Marijuana under 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(D). (Doc. 104). Count Two carried an imprisonment term of no more than five years, a fine to not exceed $250,000, and a period of supervised release; the Government and Robinson agreed "a sentence of sixty (60) months [was an] . . . appropriate sentence in this matter." (Doc. 118, ¶¶ 104, 154).

On August 4, 2023, Robinson was sentenced to sixty (60) months imprisonment, a $900 fine, $100 special assessment, and three (3) years of supervised release. (Docs. 119, 120). The Government dismissed the remaining counts against Robinson. (Doc. 119). Robinson's Judgment was filed on August 8, 2023, and on August 11, 2023, Robinson filed a Notice of Appeal to the United States Court of Appeals for the Eighth Circuit. (Docs. 120, 122).

The Eighth Circuit Court of Appeals affirmed the Judgment on January 18, 2024. (Doc. 135-1, 2). The appellate court concluded Judge Brooks properly interpreted the applicable guideline range and further held that because Robinson "agreed to the particular sentence he received, he may not now challenge it on appeal." *Id*.; *see also United States v. Anderson*, 618 F.3d 873, 879 (8th Cir. 2010). The Circuit Court also granted Miller's withdrawal from the case and issued its mandate on February 8, 2024. *Id*.

On November 4, 2024, Robinson filed his *pro se* Motion to Vacate, Set Aside, or Correct Sentence, under 28 U.S.C. § 2255, requesting "remand to the sentencing court for sentence correction and to be released on bond pending the final judgment of this case. [*sic*] and an evidentiary hearing on these claims of ineffective assistance of counsel." (Doc. 139, p. 13).

3

## II. ROBINSON'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Robinson asserts five grounds for § 2255 relief. In Ground One, Robinson contends "[c]ounsel was ineffective for advising Mr. Robinson incorrectly that he would only serve two years at most...Counsel's advice was erroneous, making [Robinson's plea] not knowingly and intelligently entered." (Doc. 139, p. 4). Robinson argues he would not have pled guilty were it not for the erroneous advice of counsel. *Id.*

In his Memorandum, Robinson explains Miller incorrectly advised Robinson that "if he chose to plead guilty, he would qualify for First Step Act time credits and only serve a year or two at most on his five-year sentence." (Doc. 139, p. 15). Robinson contends that, if not for Miller's erroneous advice, he would not have taken the plea agreement; Robinson emphasizes it was Miller's advice that led Robinson to believe he would not serve more than two years of his sentence and thus lead him to plead guilty. Robinson says that, contrary to Miller's advice, the Bureau of Prisons ("BOP") notified him of his ineligibility for "FSA Time Credits ("FTC") due to having a gun charge." *Id.;* see also Doc. 139, p. 20. Robinson believes *United States v. Rumery* and *Tollett v. Henderson* entitle him to an evidentiary hearing regarding counsel's erroneous advice about these credits. (Doc. 139, p. 15; citing *United States v. Rumery,* 698 F.2d 764 (5th Cir. 1983); *Tollett v. Henderson*, 411 U.S. 258 (1973)). Robinson alternatively argues that the Court should order the BOP to grant FTC on his sentence if it finds Miller was correct in his advice about early release qualification. *Id.*

In Ground Two, Robinson contends that his "case presents a novel case and contraversy [*sic*] for the court to resolve. The issue being whether State law [enforcement] have probable cause to search for marijuana when a dog sniff alerts them to the presence of drugs in a State where marijuana is legal to possess by some people. normall [*sic*] a dog sniff is not something that

implicates the Fourth amendment, but where the presence of marijuana is suspected and the dog alerts to marijuana. There [*sic*] is no way to tell if an illegal amount was possessed and [*sic*] implicates the Fourth amendment." (Doc 139, p. 5). Robinson did not raise Ground Two on direct appeal because "[d]efense counsel was ineffective for not raising this issue no matter how much I implored him to." *Id.*, p. 6. In his Memorandum, Robinson alleges his case presents a novel case and controversy because a conflict of law exists concerning the constitutionality of dog sniffs constituting probable cause. (Doc. 139, p. 16). Robinson contends his Fourth Amendment rights were violated when he "was stopped for investigation of possession of Marijuana, waiting 48 minutes for a dog sniff unable to leave or make a call or do anything without the officer's consent..." and thus, these circumstances "amount[ed] to an unreasonable search" and being placed in "de facto custody." *Id.* Robinson believes a conflict of law exists because Arkansas state law allows limited marijuana possession. (Doc. 139, citing *People v. McKnight*, 446 P.3d 397, 399 (Colo. 2019)). Robinson asserts evidence gathered from the December 7, 2021, traffic stop (the "Traffic Stop") was seized unconstitutionally. (Doc. 139, p. 16). Robinson contends the District Court erred when denying his motion to suppress the "fruits" from the Traffic Stop. *Id.*

As Ground Three, Robinson says that Miller "was ineffective for not using the proper legal argument to challeng[e] the nature of the *Terry* investigative stop. The State marijuana laws allow some to possess marijuana legally, counsel was ineffective for not challenging the validity of the dog sniff as the dog cannot tell an officer that there is an illegal amount present." (Doc 139, p. 7). Robinson did not raise Ground Three on direct appeal because "[d]efense counsel was ineffective for not raising this issue even though he was urged to raise it repeatedly." *Id.* Robinson's Memorandum argues that the *Terry* style nature of the Traffic Stop and subsequent arrest lacked the requisite probable cause under the Fourth Amendment, and that Miller was ineffective by

failing to argue that Robinson's arrest lacked probable cause. (Doc. 139, p. 17). Robinson reasons that Arkansas law allows for "legal possession of marijuana," and that the dog alert for "legal marijuana" is neither a reliable nor a proper indicator of probable cause. *Id*. Robinson argues his "48[-] minute custody delay [in relation to the Traffic Stop] was unreasonable" and "falls well within the gambit of cases where a *Terry* style stop is unduly prolonged." *Id*.; *citing Hall v. District of Columbia*, 867 F.3d 138, 153 (D.C. Cir. 2017). Robinson cites *United States v. Pavao,* arguing the district court there found that smells of burnt marijuana do not indicate criminal activity is afoot. Robison also cites *Passman v. Blackburn* in support of his belief that "[Miller] was ineffective for not raising this issue in either the district court [*sic*] or on direct appeal." *Id*.; *see generally United States v. Pavao*, 1:22-CR-00034-MSM-PAS, 2023 WL 3934555 (D.R.I. June 9, 2023); *Passman v. Blackburn*, 652 F.2d 559 (5th Cir. 1981).

For Ground Four, Robinson alleges "[c]ounsel was ineffective on appeal, as he did not comply with the requirement of *Anders v. California* when he withdrew from the case. Counsel failed to notify Mr. Robinson of his withdrawal under *Anders*, and did not allow him to participate in his own defense by raising any of the issues in the attached memorandum of law…." Robinson did not raise Ground Four on direct appeal because "[c]ounsel ineffectively refused to defend, notify, and listen to your client at every statge [*sic*]." (Doc. 139). Robinson asserts Miller's failure to notify him of withdrawal renders Miller's assistance ineffective. Robinson requests the court grant an evidentiary hearing to "determine the extent of the prejudice caused by counsels [*sic*] failures." *Id*.

And finally, for Ground Five, Robinson claims Miller "ineffectively did not [challenge] and stood idly by as the Judge participated in plea negotiations by advising Mr. Robinson to take the plea, and the judge told him he would not [receive] any more time even if he were assigned a

6

different [attorney]. This had the effect of rushing [me]to judgment and pressuring [me] to plea, as well as not giving a new attorney that might be assigned any time to get up to speed on the case." (Doc. 139, p. 10). Ground Five was not raised on direct appeal, according to Robinson, because counsel's assistance was ineffective as he "refused to raise any issue brought up by [] Robinson." *Id*. Robinson's Memorandum alleges Miller was ineffective because Miller did not challenge Judge Brooks' alleged "improper involvement in plea negotiations" and Miller lacked competence when failing to investigate "falsehoods" the police made when justifying the Traffic Stop's *Terry*-nature. (Doc. 139, pp. 18-19). Robinson believes Miller's alleged "failure to investigate [Robinson's] factual or legal claims" equated to counsel failing to "provide performance within the competency expected from criminal defense counsel." (Doc. 139, p. 18 (referring to *Young v. Zant*, 677 F.2d 792, 798 (11th Cir. 1982))). As for the contention about improper involvement from a judge, Robinson alleges Judge Brooks "urged him to plea even threatening to give him no more time even if replacement counsel was appointed." *Id*., p. 19. Robinson says he felt rushed by the Court and unsupported by his counsel. *Id*.

### III. UNITED STATES' RESPONSE

The Government argues, *inter alia*, that Robinson's Motion should be denied because (1) counsel's performance was not constitutionally deficient, and (2) Robinson fails to demonstrate any prejudice caused by counsel's conduct. The Government contends no evidentiary hearing is required.

The Government argues that for Robinson to succeed on his ineffective assistance of counsel claim, he must establish Miller's performance was deficient, and that Miller's deficient performance was prejudicial. (Doc. 144, p. 7, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The Government argues Robinson has failed to show any deficient performance on the

7

part of Miller or that, absent any prejudicial performance, the results would have been different. (Doc. 144, pp. 8-9).

With respect to Ground One, the Government argues Robinson lacks any factual basis to establish that he reasonably believed – based on any advice from Miller – that he would be incarcerated for only one to two years, pointing to the change of plea hearing where Robinson voluntarily pled guilty, acknowledging that five (5) years/sixty (60) months was the maximum sentence and appropriate sentence, and acknowledging that he had not been "promised anything else in terms of a sentence by anyone." (Doc. 144, pp. 11-14). The record is replete, says the Government, with evidence of the knowing and voluntary nature of Robinson's plea, pointing out that Robinson himself declared during one hearing that his plea was to safeguard his chance at watching his "babies grow up" even if that meant he was sentenced to "60 to 71 months." *Id.*, p. 17. The Government contends Robinson's plea was both knowing and voluntary, and that Robinson has failed to establish any deficient performance by Miller in connection with Robinson's plea. Even if Miller did give Robinson "a mistaken impression about the length" of his sentence, the Government contends this would not have rendered Robinson's plea involuntary considering Judge Brooks' comprehensive conversation with Robinson about the maximum sentence during the plea hearing. *See United States v. Quiroga,* 554 F.3d 1150, 1155 (8th Cir. 2009).

With respect to Grounds Two and Three, the Government rejects as frivolous Robinson's claim that his search and seizure issues are "novel." Moreover, the Government argues that defendants such as Robinson who plead guilty waive all non-jurisdictional defenses. *United States v. Stewart*, 972 F.2d 216, 217 (8th Cir. 1992). The Government contends Grounds Two and Three – raising Fourth Amendment (and related suppression) concerns – are barred from consideration

because Robinson's Plea Agreement was not a conditional agreement which preserved Robinson's right to challenge non-jurisdictional defects. *See Smith v. United States,* 876 F.2d 655, 657 (8th Cir.), *cert. denied,* 493 U.S. 869 (1989). The Government further describes Robinson's complaints that Miller did not raise evidentiary challenges on appeal as unmeritorious and frivolous. (Doc. 144, pp. 21-22).

With respect to Ground Four and Robinson's complaints about Miller's *Anders* appeal, the Government characterizes them simply as a repetition of Robinson's frustrations in Grounds Two and Three regarding Miller's failure to appeal the suppression issues to the Eighth Circuit. The Government first reiterates that there is no evidence of deficient representation by Miller followed by a comprehensive argument that Robinson cannot demonstrate any reasonable probability that Robinson can establish *Strickland's* prejudice prong. *Id.*, p. 23. Moreover, because of the nature of an *Anders*' appeal, the Eighth Circuit independently reviewed the record under *Penson v. Ohio* and found Robinson possessed no non-frivolous issues for appeal. (Doc. 144, p. 25).

Finally, the Government argues the record squarely contradicts Robinson's Fifth Ground, rejecting Robinson's contention that Judge Brooks improperly participated in plea negotiations because the record clearly establishes otherwise. Describing these claims as "meritless," the Government points out that Robinson's on-the-record assertions contradict any notion of coercion and/or undue pressure, citing Robinson's affirmation that entering into the Plea Agreement was a "product of his own free will" and answering Judge Brooks' many questions in support of his voluntary, knowing, and intelligent acceptance of the Plea Agreement. *Id.* at pp. 25-26.

With respect to Robinson's hearing request, the Government states that § 2255 and Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court ("Rule 4(b)") provide the framework for determining whether an evidentiary hearing should be granted.

9

Under § 2255, prisoners are not entitled to a hearing where the record conclusively illustrates the prisoner's ineligibility for relief. Relying on Rule 4(b) and *McGill*, the Government argues that while courts "must take many of petitioner's factual averments as true … the court[s] need not give weight to conclusory allegations, self-interest and characterizations, discredited inventions, or opprobrious epithets." (Doc. 144, pp. 5-6 (quoting *United States v. McGill,* 11 F.3d 223, 225 (1st Cir. 1993))). Additionally, the Government contends no evidentiary hearing is needed given that all the information necessary to decide Robinson's § 2255 claims is already in the record. (Doc. 144, p. 6). The Government believes the issues raised, even if true, do not entitle him to relief due to the record contradicting the conclusions. *Id.* The Government says Robinson's Motion lacks a "substantial showing" to establish the alleged denial of a constitutional right and thus no hearing is needed. *See Cox v. Norris,* 133 F.3d 565, 569 (8th Cir. 1997).

### IV. ROBINSON'S REPLY TO THE GOVERNMENT'S RESPONSE

Robinson replied on January 17, 2025, re-arguing the ineffective assistance of counsel issues and reiterating why he believes an evidentiary hearing is required. (Doc. 145, p. 1). Robinson repeats his frustrations with Miller's "conduct" and contends Miller incited "racially motivated" fear in Robinson. *Id.*, p. 2. Robinson's Reply suggests Miller manipulated him into pleading guilty by alluding to an "All White Jury." *Id.* Robinson contends the court allowed "racially unfair representation" when it failed to grant Miller time to familiarize himself with Robinson's record and failed to investigate Robinson's allegations. *Id.*, pp. 2-3. Robinson's reply cites nonbinding precedent from the First, Fourth, and Fifth Circuits, (Doc. 145, pp. 1, 3-4) and continues to argue he was coerced into the Plea Agreement and would have gone to trial if he had known his sentence was more than two years.

## V.  DISCUSSION

When federal prisoners believe their sentence is in violation of the Constitution or laws of the United States, or that their sentence exceeded the maximum sentence by law, or is otherwise subject to collateral attack, they may move the court which imposed the sentence to either vacate, set aside or correct the sentence. 28 U.S.C. § 2255(a). Courts may grant § 2255 motions if they find the law does not authorize the judgment or if denials and infringements upon the constitutional rights of the prisoner exist which render the judgment vulnerable to collateral attack. 28 U.S.C. § 2255(b). This Court's review of Robinson's § 2255 Petition, considering the record, conclusively illustrates that Robinson is not entitled to relief. The undersigned recommends dismissal of his § 2255 Motion with prejudice and without conducting an evidentiary hearing.

### A. Timeliness

Section 2255(f) imposes a 1-year limitation period for filing this particular type of motion. Time begins to run from the latest of the following: (1) the date when the conviction judgment becomes final; (2) the date when the impediment to making a motion created by the governmental action in violation of the Constitution of law of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date when the right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date when the facts supporting the claim or claims presented could have been discovered through exercise of due diligence. 28 U.S.C. § 2255(f).

Robinson argues he is within the time limits established by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) (Doc. 139, p. 14) yet also alludes to a possible time-bar (Doc.

139, p. 3).[2] Robinson filed his § 2255 Motion on November 11, 2024. The Eighth Circuit Court of Appeals issued an opinion and judgment on January 18, 2024. Robinson's conviction became final on February 8, 2024; therefore, Robinson's § 2255 Motion is filed within the 1-year period of finality and the timeliness of Robinson's Motion is not at issue.

### B. Procedural Bars to Relief

Petitioning for a writ of habeas corpus is a constitutionally protected right which allows federal prisoners to challenge their conviction or sentence. When petitioning for a writ, prisoners request the court determine the legality of their conviction or sentence. Statutes regarding federal habeas corpus are in 28 U.S.C. §§ 2241-66. In Robinson's § 2255 challenge, Robinson identified three primary issues as the grounds for relief: (1) ineffective assistance of counsel; (2) conflict of laws on evidentiary issues; and (3) the reasonableness of his arrest.

In a § 2255 motion, petitioners can only raise constitutional or jurisdictional issues. *Anderson v. United States*, 25 F.3d 704, 704 (8th Cir. 1994). Petitioners "cannot raise a nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not." *Id.*, at 706. Furthermore, "a guilty plea waives all defects except those that are jurisdictional." *United States v. Todd,* 521 F.3d 891, 895 (8th Cir. 2008) (internal quotation omitted); *see also Walker v. United States,* 115 F.3d 603, 604 (8th Cir. 1997) ("[A] valid guilty plea forecloses an attack on a conviction unless on the face of the record the court had no power to enter the conviction or impose the sentence.") (internal quotation omitted). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of

---

[2] When responding to 11(d) – which questioned why he did not appeal from the action on any motion, petition, or application – Robinson answered, "[t]ime limitation for filing this 2255 motion."

constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson,* 411 U.S. 258, 267 (1973).

Here, Robinson proffers only a single constitutional issue and raises no jurisdictional ones. Applying governing Eighth Circuit precedent, Robinson's claims regarding conflicts of laws on state and federal marijuana regulations, and his allegedly unreasonable search, seizure and arrest afford him no relief pursuant to § 2255. The undersigned first notes that although the State of Arkansas permits medical marijuana, federal law continues to prohibit marijuana even by medical consumers. *See* 21 U.S.C. §§ 812, 844(a); *Gonzales v. Raich*, 545 U.S. 1, 26-29 (2005).[3] Marijuana remains a Schedule I controlled substance under the Controlled Substances Act and given that the Supremacy Clause unambiguously provides that federal law prevails in any conflict between federal and state law, Arkansas law is not controlling and provides Robinson no avenue for § 2255 relief.[4] Second, Robinson's guilty plea agreement bars relief on these grounds under § 2255. *Tollett, supra.* And third, when affirming his sentence, the Eighth Circuit held that Robinson had agreed to a particular sentence – 60 months – and "may not now challenge it on appeal." (Doc. 135-1, p. 2). Due to the unconditional nature of Robinson's plea agreement, no specific rights were reserved for Robinson. Habeas petitioners cannot complain about evidence if they have already been provided a "full and fair" opportunity to raise the error on trial and appeal.

---

[3] Section 812 involves controlled substances and § 844(a) involves penalties. 21 U.S.C. §§ 812, 844(a). *Gonzales v. Raich* discusses how Congress's plenary power under the Commerce Clause includes power to prohibit local cultivation and use of marijuana in compliance with California's Compassionate Use Act of 1996 medicinal use provisions. *Gonzales*, 545 U.S. at 26-29. Additionally, the Supreme Court held that medical necessity is not a defense to manufacturing and distributing marijuana — rendering Robinson's conflict of law contention meritless. *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 491-95 (2001).

[4] 21 U.S.C. §§ 802(6), 812(c); *Gonzales*, 545 U.S. at 29; *see also United States v. McIntosh*, 833 F.3d 11163, 1176 (9th Cir. 2016) (reiterating that "the CSA prohibits what the State Medical Marijuana Laws permit").

13

*Stone v. Powell*, 428 U.S. 465, 494 (1976). In *Sun Bear v. United States*, the Court of Appeals for the Eighth Circuit emphasized that defendants have no right to move to vacate after a decision was reached on direct appeal. *Sun Bear v. United States*, 644 F.3d 700, 702-704 (8th Cir. 2011).

Thus, Robinson's § 2255 challenges concerning conflicts of law regarding marijuana and alleged Fourth Amendment violations are procedurally barred and afford Robinson no relief. This leaves for consideration Robinson's ineffective assistance of counsel claims.

### 1. Ineffective Assistance of Counsel Claim

Where federal prisoners believe their constitutional right to an effective attorney was violated, they may raise an ineffective assistance of counsel claim to argue a Sixth Amendment violation. *Strickland v. Washington*, 466 U.S. 668, 699, 701 (1984). When determining whether a prisoner's right to effective counsel was violated, the court must apply a two-part test: (1) performance – whether the defendant's attorney acted in a manner unreasonable to prudent counsel; and (2) prejudice – but for defendant's attorney's action, defendant would have a different outcome. *Id*., at 687-88. When considering the first element, there is a "strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance and sound trial strategy." *Toledo v. United States*, 581 F.3d 678, 680 (8th Cir. 2009) (quoting *Garrett v. United States*, 78 F.3d 1296, 1301 (8th Cir.1996)). Where a defendant is unable to prove prejudice, the reviewing court does not need to address the deficiency of counsel's performance. *Strickland*, 466 U.S. at 688. Regarding prejudice, the standard is one of "reasonable probability." *Id*., at 694. "The burden of proving ineffective assistance of counsel rests with the defendant." *United States v. White,* 341 F.3d 673, 678 (8th Cir. 2003) (citing *United States v. Cronic,* 466 U.S. 648, 658 (1984)).

Before deciding whether to plead guilty, a defendant is entitled to "the effective assistance of competent counsel." *McMann v. Richardson,* 397 U.S. 759, 771 (1970). Based on a comprehensive review of the record and Robinson's Motion, the undersigned does not believe Miller's assistance to Robinson fell "below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688. To the contrary, the record supports that Miller acted in a reasonable manner for prudent defense counsel in a criminal case. After being appointed as Robinson's third attorney on October 13, 2022, the record reflects that Miller obtained a continuance; counseled Robinson through the charges contained in the Fourth Superseding Indictment; filed a Motion in Limine; obtained eight (8) subpoenas compelling witnesses' attendance at Robinson's trial; filed a Motion to Reconsider the prior evidentiary/suppression issue; represented Robinson through a failed change of plea/pre-trial hearing on January 5, 2023; obtained another continuance; attended a motion hearing; and then counseled Robinson through a complicated but ultimately successful change of plea hearing. While Robinson's change of plea hearing on February 21, 2023, got off to a rocky start – including Robinson's short-lived request to represent himself – after Robinson had an opportunity to take a recess and confer with Miller, Robinson reaffirmed that he wanted to plead guilty to Count Two, and after assessment, Judge Brooks found Robinson competent to proceed. (Doc 129, p. 49). With Miller by his side, Robinson made clear during this hearing that he knew the sentence of sixty (60) months had been agreed as appropriate, and that he had entered into the plea agreement knowingly and voluntarily, without threat or coercion, and without any promise or assurance about the sentence he would receive. (Doc. 129). Robinson acknowledged that he was satisfied with Miller and that Miller had advised him about the plea agreement and answered Robinson's questions before Robinson agreed to sign the plea agreement. (Doc. 129). Robinson acknowledged that nothing Miller had said or done had forced Robinson into pleading

15

guilty. (Doc. 129). Robinson's new allegation is that Miller threatened him with an all-white jury to get him to plead guilty; this eleventh hour allegation is inconsistent with the record. Moreover, had Miller included a jury demographics and composition discussion in his trial advice to Robinson, Robinson has not established that such a conversation was outside the wide range of professional assistance. Counsel has a duty to inform the defendant of the applicable law, *see Hill v. Lockhart*, 474 U.S. 52, 62 (1985) (White, J., concurring); however, the Court is deferential to the professional discretion of counsel when it comes to matters of trial strategy. *See United States v. Villalpando*, 259 F.3d 934, 939 (8th Cir. 2001). Robinson's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687.

 Robinson says Miller advised him that he would not serve the five (5) years but only 1-2 years in prison if he pled guilty. On this issue, the Government is correct – even if Miller had given Robinson "a mistaken impression about the length" of his sentence – this would not have rendered Robinson's plea involuntary considering Judge Brooks' comprehensive conversation with Robinson about the maximum sentence during the plea hearing as well as Robinson's agreement that five (5) years was both the maximum and the appropriate sentence. *See United States v. Quiroga*, 554 F.3d 1150, 1155 (8th Cir. 2009). Robinson's contention founders on abundant circuit precedent holding that inaccurate advice of counsel about the likely punishment does not render involuntary a defendant's decision to plead guilty, so long as the defendant is informed of the maximum possible sentence permitted by statute and the court's ability to sentence within that range. In *United States v. Granados,* 168 F.3d 343 (8th Cir.1999) (per curiam), for example, the Eighth Circuit held that "a defendant's reliance on an attorney's mistaken impression about the length of sentence is insufficient to render a plea involuntary as long as the court informed the

16

defendant of his maximum possible sentence." *Id.* at 345. Several other decisions are to the same effect. *See United States v. Gomez,* 326 F.3d 971, 975 (8th Cir.2003) (rejecting a defendant's contention that a guilty plea was not "knowing and voluntary" where counsel did not advise him that he would be sentenced as a career offender, because, inter alia, "the sentencing stipulations in the plea agreement were clearly stated to be non-binding on the sentencing court"); *United States v. Spears*, 235 F.3d 1150, 1152 (8th Cir.2001) (holding that a defendant's guilty plea was "knowing and voluntary," despite "any confusion about how he would fare under the Sentencing Guidelines"); *United States v. Bond,* 135 F.3d 1247, 1248 (8th Cir.1998) (per curiam) ("A defense counsel's erroneous estimate of a guidelines sentence does not render an otherwise voluntary plea involuntary."); *Roberson v. United States,* 901 F.2d 1475, 1478 (8th Cir.1990) (holding that a defendant's reliance on defense counsel's erroneous prediction that he would receive a more lenient sentence if he pled guilty did not make his plea involuntary, where the defendant was fully informed of the maximum sentence on each count); *Hollis v. United States,* 687 F.2d 257, 260 (8th Cir.1982) (rejecting a defendant's claim that his plea was involuntary, as "[t]he rule is clear that a defendant cannot set aside a guilty plea merely because he relied on his attorney's opinion that the sentence would be a lenient one").

Moreover, should Robinson believe the Bureau of Prisons is incorrect in its calculations, "[p]risoners are entitled to administrative review of the computation of their credits, 28 C.F.R. §§ 542.10-542.16, and after properly exhausting these administrative remedies, an inmate may seek judicial review through filing a habeas corpus petition under 28 U.S.C. § 2241." *United States v. Tindall,* 455 F.3d 885, 888 (8th Cir. 2006) (citing *United States v. Wilson,* 503 U.S. 329, 335 (1992) (additional citation omitted).

17

Robinson also criticizes Miller's *Anders* brief and the alleged lack of notice of Miller's withdrawal. The record simply does not support either as deficient performance. Miller filed the *Anders* brief, Robinson was afforded an opportunity to raise claims for appellate review, and the Eighth Circuit then performed the required review. Robinson has not established that Miller's representation of Robinson on appeal was deficient under *Strickland*.

As for the prejudice prong of the *Strickland* test, it is also unsatisfied by Robinson's allegations. Although Robinson was frustrated with the evidentiary rulings in his case, it was clear at critical times in his case (even during his earlier failed plea hearing) that Robinson did not believe it to be in his best interest to go to trial. (See Doc. 103, p. 6). On the record, Robinson was adamant about watching his kids grow up and recognized – in open court – that the plea agreement allowed him to do so. During his successful plea hearing, Robinson was insistent that he wanted to plead guilty. Where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 57 (1985). This Robinson simply has not done.

Robinsons' new assertion that Judge Brooks was improperly involved in the plea negotiations and/or coerced Robinson to plead guilty also lacks merit. The record belies any indication of improper plea negotiation involvement. The "presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). During his successful change of plea hearing, when Judge Brooks asked if anyone had forced him to plead guilty, Judge Brooks specifically inquired about himself, and Robinson denied that Judge Brooks had forced Robinson to plead guilty. (Doc. 129). Furthermore, by signing the plea agreement and verbally

18

attesting during his plea hearing that acceptance of the plea was his own volitional act, Robinson confirmed that no improper interference occurred. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Unsupported conclusory allegations to the contrary are subject to summary dismissal. *Id*.

## VI.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Robinson's Motion to Vacate, Set Aside, or Correct Sentence (Doc. 139) be **DENIED**.

The undersigned also recommends that Robinson's request for an evidentiary hearing be **DENIED** as an evidentiary hearing is unnecessary where "the record clearly indicates that the petitioner's claims are either barred from review or without merit." *Toney v. Gammon,* 79 F.3d 693, 697 (8th Cir. 1996) (internal quotation marks omitted).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must both be timely and specific to trigger de novo review by the district court.**

**RECOMMENDED** this 24th day of June 2025.

*Christy Comstock*
_____
CHRISTY COMSTOCK
U.S. MAGISTRATE JUDGE